(January 24, 1887.)

## STEVENSON v. SILAS W. MOODY, TERRITORIAL COMPTROLLER.

[12 Pac. 902.]

OFFICERS AND ATTACHES OF LEGISLATIVE ASSEMBLY—LIMITATION AS TO NUMBER.—The number of officers and attachés of territorial legislative assembly is determined by the laws of the United States, and cannot be increased by any act of the legislative assembly itself.

EXPENSES OF LEGISLATIVE ASSEMBLY—CANNOT PAY ATTACHES NOT AUTHORIZED.—A territorial legislative assembly is limited in its expenses to the amount provided by Congress, and cannot appropriate money from the territorial treasury to pay attachés not authorized by the act of Congress.

Heard upon agreed statement of facts.

No briefs filed.

No attorneys named in record.

BUCK, J.—This controversy comes into this tribunal, as a court of original jurisdiction, upon an agreed statement of facts, under sections 20 and 780 of our Code of Civil Procedure. The statement of facts agreed upon by the parties, and submitted to the court, are: 1. That on the thirteenth day of December, A. D. 1886, the legislative council of Idaho territory pro-

ceeded to elect such *attaches* as have formerly been elected; that the plaintiff was elected to a position designated by said council as "assistant chief clerk of the council," and that, as such clerk, he has rendered services for thirty-nine days; 2. That assistant chief clerks of the council, so called, have been elected by former assemblies of this territory; 3. That the duties devolving upon the chief clerk of said council are onerous in the extreme, and that public business is expedited by the employment of an assistant, and such assistance is necessary for the proper transacting of the business of the council; 4. That the plaintiff made the demand of the defendant, as comptroller of Idaho territory, for a warrant upon the general fund of the territory for the sum of $195, claimed by him to be due him for said services, at the rate of five dollars per day, as said assistant chief clerk, and the defendant refuses to execute or deliver said warrant to plaintiff for the alleged reasons: 1. That there is no law of the United States creating or recognizing such subordinate officer of either branch of the legislative assembly of the territory; 2. That the laws of the United States forbid the payment of moneys belonging to this territory to any subordinate officers of the legislative assembly, for services rendered such assembly; 3. That the laws of the United States forbid the creation of such subordinate office by a legislative assembly; and 4. Because there is no law authorizing the comptroller to draw a warrant in payment for services rendered said assembly by persons not officers of said territory.

The following sections of the United States Statutes determine the powers and authority of our territorial assembly. "Sec. 1851. The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. . . . . Sec. 1855. No law of any territorial legislature shall be made or enforced by which the governor or secretary of a territory, or the members or officers of any territorial legislature, are paid any compensation other than that provided by the laws of the United States. . . . Sec. 1888. No legislative assembly of a territory shall, in any instance, or under any pretext, exceed the amount appropriated by Congress for its annual expenses."

In the case of *National Bank v. County of Yankton,* 101 U. S. 129, Mr. Chief Justice Waite, in announcing the decision of the court, says: "All territory within the jurisdiction of the United States, not included in any state, must necessarily be governed by or under the authority of Congress. . . . . The relation of the territories to the general government is much the same as that which counties bear to their respective states, and Congress may legislate for them as a state does for its municipal corporation. The organic law of a territory takes the place of a constitution, as the fundamental law of the local government. It is obligatory, and binds the territorial authorities. Congress has full and complete legislative authority over the people of the territories, and all the departments of the territorial government."

It is clear from the inspection of the organic act of the territory, and from the decision of the supreme court of the United States, that the legislative assembly can be composed of such persons only as are provided by congressional enactment, and that the number of its officers and *attaches* is determined by the same power. A legislative assembly of the territory cannot increase the number of its members or officers or *attaches,* or the amount of their compensation, by any enactment of its own. If the length of time allowed for its session, or the number of its officers, is not sufficient, the relief must come from Congress. Section 1855 of the United States Revised Statutes limits the compensation of the members of the legislative assembly to a specified amount. Section 1888, in still more explicit terms, provides that the annual expenses of a legislative assembly shall not exceed, in any instance, or under any pretext, the amount appropriated by Congress. Section 1855 enacts that the amount of such compensation for any member or officer of a territorial assembly shall not be increased over the amount provided by Congress, and prohibits, in express terms, the making of a law for that purpose by such assembly.

In January, 1873, as appears by section 1861 of the Revised Statutes of the United States, assistant chief clerks of each branch of the legislative assembly of territories were expressly provided for. In 1878, however, by act of Congress passed

June 19th (20 U. S. Stats. 193), said section was repealed, and it was provided that the subordinate officers of each branch of the territorial legislature shall consist of a chief clerk, enrolling and engrossing clerk, sergeant-at-arms, and doorkeeper, messenger, and watchman, and chaplain. The office of assistant chief clerk was not included within this new enumeration of *attaches* to the legislative assembly. We must presume that this omission was intentional.

From an inspection of the several sections of the United States Statutes, and the decisions of the supreme court of the United States, it seems clear that the election of an assistant chief clerk of the council was not authorized by law; that the joint resolution of the legislative assembly, providing for the payment of such officer out of the territorial treasury, was contrary to the laws of the United States, and void; and that the territorial comptroller is not authorized by law to draw a warrant upon the territorial treasurer for the payment of plaintiff as said assistant clerk.

Upon the above conclusions of law, and the stipulation of parties herein, this controversy is dismissed.

Hays, C. J., and Broderick, J., concurring.